PETER J. MARRONE *vs.* CITY MANAGER OF WORCESTER.

Worcester.    September 23, 1952. — November 3, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*License.   Theatre.   Words, "At . . . pleasure."*

The provision of G. L. (Ter. Ed.) c. 140, § 181, for revocation of a license "at . . . [the] pleasure" of the licensing authority places the matter of revocation in the discretion of the authority.

A revocation of a license for a so called drive-in theatre about two months after it was issued under G. L. (Ter. Ed.) c. 140, § 181, could not be said to be arbitrary and capricious and not to be a proper exercise of discretion and could not be quashed on certiorari merely because the stated grounds of the revocation had been considered by the licensing authority before the issuance of the license.

PETITION, filed in the Superior Court on June 8, 1951.

The case was heard by *Fairhurst*, J.

In this court the case was submitted on briefs.

*George H. Yagjian, Cosimo J. Toscano, & Harry Zarrow,* for the petitioner.

*Archibald M. Hillman,* City Solicitor, & *Richard W. Mirick,* Assistant City Solicitor, for the respondent.

SPALDING, J.    The petitioner brings this petition for a writ of certiorari against the city manager of Worcester to quash the revocation of the petitioner's license to operate a drive-in theatre, so called, in the city of Worcester. The case was heard on the petition and the respondent's substituted return. From an order dismissing the petition the

petitioner appealed. G. L. (Ter. Ed.) c. 231, § 96. *Adamsky* v. *City Council of New Bedford,* 326 Mass. 706, 707. *Mayor of Beverly* v. *First District Court of Essex,* 327 Mass. 56, 58.

The petitioner filed his application for a license on June 15, 1950. After an investigation, which included a public hearing and a report by one of the city's police officers, the respondent notified the petitioner that his application for a license was approved subject to certain conditions concerning the operation and construction of the theatre and the posting of a surety bond to insure their performance. The required bond was filed by the petitioner and the license was issued on November 29, 1950. Thereafter, on January 22, 1951, the respondent informed the petitioner by letter that "in the public good" the license was revoked.

The statute (G. L. [Ter. Ed.] c. 140, § 181) under which the license in question was issued expressly provides that the licensing authorities may "revoke or suspend such license at their pleasure."[1] It is settled law in this Commonwealth that "One who accepts a license revocable at the discretion of the granting authority takes it subject to that infirmity, and he has no just ground of complaint if the power to revoke is properly exercised before the term of the license has expired." *Woodbury* v. *Municipal Council of Gloucester,* 318 Mass. 385, 388–389, and cases cited. The words "at their pleasure" in § 181 have been construed to mean "in the exercise of a wise discretion." *Commonwealth* v. *McGann,* 213 Mass. 213, 215. The petitioner urges that the revocation here was arbitrary and capricious. If that is so then it would not be "in the exercise of a wise discretion" and cannot stand. *Burgess* v. *Mayor & Aldermen of Brockton,* 235 Mass. 95, 101.

It appears that the respondent in his letter to the petitioner based the revocation on the following grounds: public opposition to establishment of a theatre, danger to the morals

---

[1] It was agreed that Worcester was operating under a Plan E charter (G. L. [Ter. Ed.] c. 43, §§ 93–116, inserted by St. 1938, c. 378, § 15) and that the respondent was vested with the authority conferred under G. L. (Ter. Ed.) c. 140, § 181, to grant and revoke licenses.

of the neighborhood, and danger due to increased traffic hazards. It is true, as the petitioner argues, that these questions were gone into at some length at the hearing which was conducted prior to the granting of the license. But we cannot say that the respondent, in reconsidering the matter and coming to a different conclusion, thereby acted arbitrarily. The respondent could have concluded that the license was improvidently granted. The petitioner has no right to insist that the error be perpetuated. What was said in *Sheriff* v. *Gillow,* 320 Mass. 46, concerning the revision of judicial decisions is not without relevancy here. It was there said at page 49, "Of course revision of a judicial decision is unfortunate even when necessary. The censorious are likely to attribute it to instability of mind, or want of calm and considered judgment, or yielding to importunity. Without undue delay after a trial a judge ought to give the case such careful and thorough consideration as to enable him to pronounce a matured judgment not easily to be shaken. Nevertheless it is more important for a judge to do justice according to his oath and his conscience than to avoid adverse criticism. If further reflection convinces him that he has erred in an announced decision, he ought to correct his error while he still has the power." Whether the circumstances here were such as to call for a revocation of the license was a matter resting in the discretion of the respondent. It is not the function of this court to determine how that discretion should be exercised. Unless we can say — as we cannot on this record — that the respondent acted capriciously, the revocation cannot be set aside.

*Order dismissing petition affirmed.*